## Trosper Coal Company v. Rader.

(Decided September 17, 1913).

### Appeal from Knox Circuit Court.

1. Contracts—Action for Breach of—Measure of Damages.—In an action for a breach of contract by the company to pay 9 cents a ton for all coal in a certain entry, the plaintiff to keep the entry in good condition, a verdict for $1,518 cannot be sustained in the absence of proof showing definitely the amount of coal to be gotten out, and the reasonable cost to the plaintiff of doing the things he was to do under the contract; as the measure of damages in such an action is what the plaintiff would have received under the contract less the reasonable cost of doing the work.

2. Contracts—Action for Breach of—Evidence.—Where the plaintiff sent an agent to another to obtain a contract from him for the plaintiff and his agent jointly, what took place between the agent and the person to whom he was sent, is competent evidence against the plaintiff, and the defendant may also show that this was reported by the agent to the plaintiff and what he said when it was reported to him.

3. Contracts—Action for Breach of.—Where the defendant refused to allow the plaintiff to complete his contract, the defendant may

not show what it paid others to carry out the contract without first showing that the prices so paid were reasonable.

4. Instructions—New Trial—Appeal.—Instructions not complained of in the grounds for new trial cannot be considered on appeal, although excepted to at the time they were given.

P. D. BLACK, JAMES D. BLACK and HIRAM H. OWENS for appellant.

J. M. ROBSION for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

In the coal mine at Trosper, Kentucky, there is what is called a straight entry. At a point on the left side of the straight entry is a trap door through which one enters what is called the crooked entry. Between these two entries is a pillar. The rooms are worked out from the crooked entry which slopes downward; thus water which accumulated in the head of the crooked entry, ran down in the rooms to such an extent as to interfere with the work. A contract was made between the boss of the mine and C. T. Rader under which, according to Rader's version of it, he was to get the water out, keep it out, and do such work in the entry as the company would have to do in other entries, and in consideration of this, it was agreed that he should have nine cents a ton on the coal mined from this entry, and if he got the coal out himself, he was to get forty-five cents a ton. He brought this suit against the company charging that after he had gotten the water out of the entry, the company had discharged him, and broken its contract. He alleged in substance that there were 30,000 tons of coal left in the pillars and stumps of the entry and 1,000 tons in the wall. On the other hand, according to the version of the contract as shown by the company, he was to be paid nine cents for the coal mined from the rooms, but his contract did not include the coal to be mined from the pillars and stumps. On a trial of the case he recovered a verdict and judgment for $1,518. The company appeals.

The first question to be determined is, does the evidence offered by him warrant the verdict for $1,518? The only testimony relating to the quantity of coal which had not been mined at the time of his discharge is given by him. He said, "There were eleven pillars and twenty-two stumps. Some of them were over 300 feet

long and some of them 100 feet. They varied in thickness, some 25 or 30 feet and others 8 or 10 feet thick. The coal was about six feet deep." He was then asked how many tons of coal remained in the mine and answered: "I believe the surveyor estimated it at 30,000 tons." The court excluded this answer. Then these questions and answers occurred: Q. Tell the jury in your own judgment how many tons of coal were in there. A. Well, I expect there was that many there. Q. Of your own judgment now? A. I guess there was that much there. I have no right to dispute it.

These answers show that he was simply stating what the surveyor had told him. He does not profess to have made any measurements himself or to have known any facts from which he could make an estimate. His statements as to the size of the pillars and stumps are too vague to be of any value; for he does not tell us how many were large or how many were small. Such evidence is too uncertain to sustain the verdict for $1,518.

There is another defect in his testimony. The court properly told the jury that the measure of recovery was the difference between the contract price and the fair and reasonable cost of doing what he was to do under the contract. He does not state any fact from which an intelligent judgment can be formed as to what a reasonable cost of doing the work that he was to do under the contract, would have been, or how long it would have taken to get out the coal referred to. He said: "The contract was for me to have nine cents on every ton of coal that those fellows mined down there, and if I loaded any myself, it was to be forty-five cents. But in the first place this water was to be all got out. So I went ahead and got the water out. I was to keep up the track and keep it in repair. I was not to perform any duties in connection with this entry other than the duties of the company itself toward the mine. I was just to keep it in condition for the miners to get the coal. If I should have a bad place in the entry that should have been my duty to have fixed it. I was just to place myself as the company and to keep it in working condition." What would have been a reasonable cost of doing this, we are left entirely to conjecture, and the verdict, for this reason also, cannot stand.

Rader testified on the trial that the boss told him that he was making too much money, and that he was discharging him for this reason. The company offered to

prove that after Rader quit, they paid other men at the same rate they had been paying him to do the same work. This proof the court properly excluded. The company may show by witnesses what was the fair and reasonable price for doing the things Rader was to do under the contract, but it cannot show what it expended after Rader quit without showing first that such expenditures were reasonable. This it may do.

To show that the contract between Rader and the company did not include the taking out of the pillars, the company introduced Wes Parr, and proved by him that Rader proposed to him that he should go to see the boss and obtain a contract from the boss for Rader and Parr as partners to take out the pillars; that Parr, at Rader's request, did go to see Ross, the mine boss, and that Ross declined to make the contract saying that he had already made a contract with another person. The court declined to allow the company to prove what took place between Parr and Ross or to prove that Parr told Rader what had taken place between him and Ross. As Rader had sent Parr to Ross to get a contract for them two, and Rader was to be a partner with Parr, Parr was Rader's agent in the conversation with Ross, and what was said between Ross and Parr was competent against Rader. It was also compenent for the company to prove that Parr reported to Rader what Ross had said and what Rader said to Parr when this was told him.

The instructions of the court not having been complained of in the motion for new trial, no question as to errors in them can be considered on the appeal. But for the reasons indicated the judgment is reversed and the cause remanded for a new trial and further proceedings consistent herewith. On the return of the case to the circuit court, the amended answer will be allowed to be filed.